Good morning and welcome to the James R. Browning Courthouse here in San Francisco. It's my pleasure to welcome you all. We have a case set for en banc oral argument. It's the United States of America v. Leopoldo Rivera-Valdez. If counsel is ready to proceed, you may come forward. May it please the court, Steve Sadie for Leopoldo Rivera-Valdez. I hope to reserve seven minutes for rebuttal. We have three judges who are appearing not in person. We have Judge Gould on the screen, Judge Ikuda on the screen, and Judge Sanchez somewhere on the screen or by audio. So okay, please proceed. Under the due process clause, the single calculated to reach the affected individual. In Jones, the Supreme Court held that when the government knows the notice was ineffective, that additional reasonable steps must be taken. Not a manhunt, not heroic efforts, but not nothing. The Jones standard has been applied in all contexts. It's been applied to property issues, to license suspension. The narrow question here is whether there's a cutout, an exemption in the immigration context for this generally applicable due process rule. Counsel? Have we ever in this circuit specifically held that Jones applies in the immigration context? I believe we have, Your Honor. In Williams, the court held that that was part of the analytical framework. And that's exactly what we're saying here, is it's part of the analytical framework for making a determination of whether the notice was reasonably calculated when they have actual knowledge that the notice was not affected. Counsel, so help me out with the record here. I'm looking at ER 158, your client's declaration. Yes. And it talks about how he wasn't informed, the hearing had been scheduled, he never received notice. I don't see anything in the declaration about where at the time they sent the notice to the address he had given, where he was living at that time, or how they could have reached him. So am I correct, first of all, that his declaration doesn't say where he was then? That is correct. Is there anything in the record where your client proffered where he actually was in the several weeks between when he gave the address and when the in absentia hearing was held, where he could have been reached? I think that what is shown there is that... I'm asking is there anything in the record where you or your client proffered where he exactly was during that time, where the government could have found him? It was not proffered, but there is evidence and the evidence was that the three mailings to that address were apparently received by him because he showed up in response to those contacts. And then what happened is that the next mailing went out and came back with not deliverable at this address. So that there was something wrong with the address. But he never put in anything in the record that says at the time those were returned undeliverable where exactly he was? No, that was the inference from having received the mail at that address and when it said not deliverable as addressed... He could have told us in the declaration had he been living there, he could have said that, right? That is not in that statement, Your Honor. Counsel, I know most of the questions you're going to get today are probably going to be about Jones. I want for a moment to assume arguendo that Jones does apply and to focus your attention on 8 U.S.C. 1326 D as the Supreme Court did in Palomas, Santiago. Yes, Your Honor. As you know, in that case there was a three-part test, if you will, of what your client would need to prove in order to get out from under his underlying conviction, basically. Again, arguendo, assuming for a moment Jones applies, what's your best argument that your client can show that he meets the other part of the test? I'm struggling with how he can do that, so help me, would you please? So, Your Honor, the position was asserted at the district court level on all three prongs of 1326 D, and they were asserting that, for example, under the voluntary departure that there was a plausible basis for receiving voluntary departure. But I think it's important for this court in making a determination of how to proceed, if you look at the supplemental excerpt of record at 30, the district court asked the prosecutor, do I need to make any other decisions in this case once I'd make a decision about the due process clause? And the answer was no. So that's exactly what's happening. The district court didn't really get into it, right? So I gather you would be saying, if we were to agree with you that Jones applies, that we should send this back to the district court to, in the first instance, make the determination that Palomas, Santiago says has to be made. Is that what we've asked for? And it's completely consistent with this court's role as a court of review, not a court of first instance. Counsel, I want to follow up on Judge Bennett's question about sort of any evidence in the record with respect to where your client might have been located. And like the district court doesn't sound like it went through the various elements under 1326, the district court also didn't do an analysis under Jones with respect to what reasonable additional steps might have been necessary or effective because the district court didn't even apply Jones in its consideration of the due process issue, correct? Yes. But there was no opportunity to develop a record with respect to where your client might have been located or provided notice with respect to the additional steps that the government could have taken. I believe the position for the government and the district court was, we sent a certified mail to the address you gave us, nothing else has to happen. And that's precisely what Jones says is insufficient. Something more has to happen. And there are... Well, except Jones is, that's a citizen, it was his property, a lot of things here. Your client, if I'm not mistaken, in the record, every time he would show up from when he got information that when he thought he was going to get a work permit or he thought he was get something, he shows up from that address. And then when they get him there, he gives some sort of false identification. And then they, at that point, read him in English and in Spanish, you're going to be deported. And they put him on notice that that's going to happen. And you'll get in the mail that date and time that it's going to happen. And you have to keep us notified of your address. And then they send it to that address. They never get any change of address from him. So your client knows he's not here legally. He knows that they are going to deport him. And he knows he has to keep his address up. But incidentally, he always showed up when it was a good thing for him to show up to get something at that address. So what will we have, you know, what else could be done? So I think there are a number of responses. But the first one is, you premised the question on the Jones that involved a citizen. The due process clause, it's persons. And the Supreme Court has repeatedly held that persons in the United States are equally covered regardless of their immigration status. And that's for very good reason, because a rule that we were talking about here applies to all situations where a person could be facing deportation to a country where they're going to be facing torture or death. They could be losing permanent resident alien status or even not be able to present a derivative citizenship. They'd have their family interrupted. They would be separated from their spouse. This is a big deal to be in. And he's not facing necessarily deportation, because as we were asserting in the district court, the court, it's not saying you are going to be deported. It's come for a removal hearing where you will have a hearing. At that hearing, you can ask for various remedies. For example, if there is something he knows, he's being deported. And how long does he wait before he brings his collateral attack up? Twelve years? Yes. Or longer? Yes. But he's not being told that he's going to be deported. He's saying that he has a removal hearing, and at the removal hearing, he would have the ability to ask for voluntary departure instead of being removed. But he was told personally that the hearing's coming up, and we are going to send you information at the address you have given us. He was told that in English and Spanish, right? Yes. Was anything like that in Jones? Yes. In Jones, at pages 231 and 232, they specifically talked about whether the person had a legal obligation to keep their address current, and they also referred to a phrase that I think is really important, inquiry notice. They said inquiry notice doesn't make a difference. Well, why does it make a difference? But there was no personal contact between the taxing authorities and the property owner, right? Nobody spoke to him. Nobody told him what was going to happen. Nobody informed him that this is on the horizon, and you better watch out. But all those same considerations were considered by the Jones court in the context of the tax situation, because it's the reasoning, and the reasoning that Jones says is a party's ability to take steps to safeguard its interests does not relieve the state of its constitutional obligation. So one thing that Jones doesn't get at is motivation, and I'm just wondering to what extent, if any, should we be considering a person's motivation to receive notice or not receive notice? How should that factor in into Jones, or does it factor in? I think that it is a overall rule that applies in all situations. It applies whether you're trying to remove from the United States somebody who's completely virtuous, or somebody who's completely evil, and all the human beings in between. It's one rule, and that one rule should apply, and then the question becomes, what are the reasonable steps that could be taken? And in Jones, of course, we heard, well, sent to another address, sent to, used occupant, posted on the door, and in Echeverria, they said, maybe look at the A file. And in this case, if you Google the address, the address shows, oh, it's not North Cleveland, it's Northeast Cleveland, with a map showing it's the division line between Northeast and North. Let's get back to a point that Judge Desai was raising, which is, this wasn't raised below, and so I'm, like, why shouldn't we treat this issue as forfeited? I think you acknowledge that the Jones question, and whether the Jones rule applies to this context, was never raised to the district court. You agree with that? I would not agree entirely, because I would say that the position taken was that, as a matter of due process, the rule, the service that was not received was insufficient under the due process clause. That was an actual notice. It seems to me that was an actual notice argument, that we didn't actually get it, and therefore, due process not satisfied. And the law doesn't support that idea, and the district court was correct to reject that idea. So what I'm trying to figure out is, you did not raise Jones below. Who should bear the burden for that failure? Council or the court for not finding the case? I would say that there's two cases that I would say that answer your question. One is Elder v. Holloway, where the Supreme Court said that a court of appeals should consider all relevant precedents, not simply those cited or discovered by the district court. And the other is Puerto v. United States from this court, in which the court said an argument is typically elaborated more articulately with more extensive authorities on appeal than in the less focused and frequently more time-pressured environment of the trial court. Well, the reason I'm following up on Judge Desai's point is she's accurately pointed out that because it wasn't raised below, a record was not developed. So, I mean, we have some discretion in this area about forfeiture, and it seems to me that there are some factors present here that counsel against proceeding in this case, because there was — it wasn't raised to the extent that the district court could develop the necessary record to figure out what reasonable notice might be available in this context. I think that the record reflects that the trial counsel completely presented a due process argument, that the due process that was used, a certified mail that was returned undeliverable, was insufficient. That is exactly what Jones supports, and that the fact that the case was not particularly cited does not mean that there was any forfeiture that occurred. It was completely presented as a due process issue, and I understand that the court would — could remand and have those issues considered. So, when Jones, when the court said that something more should have been done, the first example of something more that they suggested was sending a follow-up notice by regular mail after the certified mail was returned. Do you agree that that didn't really make sense in this context, because the government's motion had been sent by regular mail, and that, too, had been returned? But it's important why it was returned. It was returned as not deliverable as addressed. There was something wrong with the address, and if you take one look at a map in Oregon, you'll see that the — that Cleveland is right on the border of northeast and north Portland, and so it was obviously just a mistake. But Jones specifically says, you know, looking in the phone book and other government records is an example of something they don't have to do. So, how is, you know, looking at Google Maps any different from that? It took me 30 seconds when I saw that in the record that they — that on page 166 that the defense was saying, hey, there's not — that's no such thing as that address, that some postal carriers might deliver it, others would look at it and say, hey, that doesn't exist. I'm not going to — I'm going to return it as non-deliverable. But it means that with very minor further steps, you can figure out that there is a problem. Right, but the phone book — the phone book is, I mean, you know, I guess they still had them back in 2006, but the phone book is pretty easy to look at, too, and so what do you think is the principle that the government had in mind when they said that that's something the government doesn't need to do? I think — I think, for example, where in Echeverria, where they said, you know, looking at — looking elsewhere in the A file, for example, for another address, that that's something that is — that is not onerous. It's not too much to ask when you have so much at stake and you have so much to lose if — by the person not having actual notice, and we know that the person did not receive actual notice. And in Jones, did they send it just by regular mail? Or was that suggested? They sent it by certified mail, and it was returned with — exactly the same way it was returned in this case. And what did the court in Jones suggest? That maybe sending it regular mail? Yes. And what the court in Jones said was, look, certified mail has advantages because you can have somebody sign it, you have proof that the person received it, but there's also detriment because the person might not be there, whereas if you send it by regular mail to the northeast, 4037 Cleveland Avenue, and it gets received, then the reasonable additional steps have been taken, and the due process would be complied with. I guess I don't understand that point about the address being perhaps slightly off in this context, because the very first notice that gets sent out about, hey, your work authorization has been approved, was sent to the same address, and we know he got it because he showed up to get his work authorization. So why would, in that context, why would the government have any reason to think that the address they were using was wrong when it worked the first time? Because if you look at the envelope that's in the record, it says not deliverable as addressed. So it was deliverable as addressed before, but now it's not — that's not saying that it was refused or anything. It's saying that the postman — the post workers were not able to deliver the mail because it's not an address. But there's no question that the address was the address your client provided, right? Yes. They didn't put down a different address than the one he provided them. That is correct. And the one that caused him, as Judge Forrest said, to show up. Yes. So he — Slightly different. There was a spelling error at how he spelled Cleveland, but that — apparently the postal workers were able to deal with that. So what was the date of the in absentia hearing? That was on August 12th, 1994. And he was removed in 2006? Yes. And did he challenge that order when he was removed at that time? No. Could he have? No, he had — I think it was four days between the time that he was arrested and the time that he was gone. Counsel, was an avenue missing from the address? Wasn't there avenue that was — or avenue was added or avenue was missing? Can you talk about that? There's a reference where one of the addresses has a P after it, and there's — but I think the — what I see as the biggest issue is that Cleveland Avenue is — is one that runs north and south and is northeast all the way, and is the boundary line. Would an avenue need to have been put on the address? And was it? The — I don't know, Your Honor. Because it looks like there's some discrepancy between the address and then its dating avenue. And so it just seems like somebody could have looked through the file to note that discrepancy, and maybe the reasonable step might have been just to send it by regular mail to where he had received it previously. And that's kind of where we are on the lack of any further step. What the position was is once we send it and get back cert — not — undeliverable, that's the end of it. We don't have to do anything further. The further reasonable steps can just be looking at the file or taking — it's not saying that we're going to have to run out and do extraordinary things in order to try to track down the individual. But the government really had to have done anything more other than perhaps sending the notice by regular mail? Because it sounds to me like your argument is that when the original notice was sent by regular mail, not the notice for the removal hearing, but a prior notice was sent by regular mail, he received it. When it was sent by certified mail, there was a problem in terms of the delivery. Perhaps they have a different system of delivering under certified mail than regular mail. So would any research have had to have been conducted at that point? What if — you know, is the reasonable additional step that you're talking about, what is it? What is the logical conclusion to what you're requesting in terms of that additional reasonable step? Reasonable — there are a number of them. One of them is simply to send it by regular mail. But they already sent the motion by regular mail five days earlier to the same address, right? Right. But some postal workers were looking at it and saying, this doesn't exist so I don't have to do anything. And other postal workers delivered the first three letters. So it's — I think it's reasonable to say, okay, let's give that a try. We know that those first three letters were received. There is a real address. It's just not properly designated for the postal services purposes because it's northeast Portland, not north Portland.  So what else? They could have sent it by regular mail. Jones suggests posting it at the house, sending it to occupant. And Echeverria says check the A file. And in this particular case where we have actual knowledge of the immigration service that this has been returned with an address problem, taking some basic check to see what was wrong with the address. What about the one that came back as unclaimed? That's the — There's one that says undeliverable and one that says unclaimed. I'm looking at ER 131. The — I believe that the undeliverable was sandwiched between two that came back with the not deliverable as addressed. I see a not deliverable as addressed at ER 137 and an unclaimed at ER 131. Yeah. And unclaimed, we don't know what that means. And as far as whether that was correctly sent to an address, we don't know. Would you like to reserve the balance of your time? Yes, thank you. Good morning. May it please the court. Sarah Barr appearing on behalf of the United States. Jones has no bearing in this case for two reasons. First, the defendant received the actual notice of the initiation of his deportation proceedings that was lacking in Jones. And second, the nature of deportation and the statutory scheme governing in absentia orders of removal and rescission of those in absentia orders of removal ensure that the alien will always know about the impending deprivation, the deportation, before it actually happens and will have the opportunity to be heard through a motion to rescind. Could I ask you just to clarify the governing legal premise at the outset? Does the United States agree with the proposition that the due process clause applies to everyone who is physically present within the sovereign territory of the United States? Yes. Okay. Yes. Thank you. And the government has never argued in this case that due process does not apply, that the defendant was not entitled to have a notice reasonably calculated to reach him. That has never been our argument. The question in this case is what does it mean to be reasonably calculated, right? Was the court, once the hearing notice was returned, required to take additional steps? So you agree that Jones applies? We would not. We do not believe that Jones applies. Because Jones, the problem in Jones was that he never received any notice that the government was starting a proceeding against him. Right? Jones pulled through the Millane due process requirement that there must be notice of the initiation of the pendency of a proceeding and an opportunity to proceed or the opportunity to object. So what was missing in Jones was the notice saying, hey, we're going to start a tax sale against you right now or we're going to start delinquency proceedings. We are alleging that you are delinquent in your taxes. You have rights. You may redeem your property. Right? But if you fail to redeem your property, it's going to be sold. That was the notice that was missing in Jones. The defendant here received that equivalent notice. He received in person and read to him in Spanish the order to show cause that told him, hey, the government is starting deportation proceedings against you. You have rights in those proceedings. You're going to have a hearing. The immigration court is going to send you notice of that hearing, and it's going to send you notice to the address you provide. You must give us your address for that specific purpose in these specific proceedings.  Counsel, this is Judge Sanchez. Can I ask you to distinguish Jones from me then? Because one of the arguments in Jones about inquiry notice was that the taxpayer, a property holder, is on inquiry notice that his property is subject to government taking if he doesn't pay his taxes. So while there isn't a direct communication that there might be a tax sale, didn't the Supreme Court in Jones contemplate this type of argument that someone should know that if you don't pay your taxes, you might be subject to forfeiture of your property? And the court rejected it? I would disagree that the context here is the same. So what the court in Jones contemplated was a statute that said, hey, everybody out there in Arkansas, you're required to keep your address updated. And, hey, tax division, you have to send by certified mail notice of the tax law, right? That's not where we're at. And the Supreme Court said that, you know, by failing to abide by that statutory requirement to keep your notice, to keep your address updated, a person does not forfeit their constitutional due process rights, right? That's not the issue here. The question here is whether the defendant forfeited his right to have the court send notice to a different address when he was told you need to keep the court updated of your address for this specific purpose, to receive the hearing notice. What's your best case for that proposition? My best case would be Mullane, which is the case that Jones brings through, right? And Mullane says that due process in notice requires informing a person that proceedings are going to be initiated and giving them the opportunity to object. Not giving them — Are you saying, so in immigration you get the notice of initiation of proceedings, and then normally you get a different notice with the time and place of your hearing? Are you saying that due process only applies to the first thing and not the second? That there is no right to actually know when your hearing is going to happen? Right. So what happens here is the statutory scheme governing deportation proceedings does exactly what Jones asks it to do, right? Jones — Jones — so let's take a step back. I'm not sure — I'm not sure you're answering my question. Maybe — okay. So I just go to the last part. So do you think there's a due process right to know the date and time of a hearing? There's a due process right to have the date and time of the hearing reasonably calculated to be sent to you. And if there is some failure, right, here's where the statutory scheme comes in. So are you arguing that you can forfeit your constitutional right by not complying with the statutory requirements, such as updating your address? No. Not — I am saying when you receive the order to show cause, like the defendant did here, telling him what his obligations are, there is an expectation of diligence under the law, which Mullane very explicitly makes clear. And that expectation of diligence applies to both parties. It applies to the government. It has to do what it says it's going to do. And it applies to the person, the defendant here in this case. Counsel, you — from my perspective, you seem to be arguing once you have the due process right, it's been had in this case. Before we get to that, I want to get back to whether Jones applies. The Fifth Circuit in Echevarria v. Pitts specifically applied Jones to immigration proceedings. Why should we not adopt the reasoning of the Fifth Circuit as to that, not in terms of how it applies in this case, but just start with does Jones apply? Sure. So we would disagree that Echevarria applied in the immigration context. And I think we need to be careful of what the term immigration context means. Here we're talking about the notice of deportation hearing context. Echevarria was a property case. It was just like Jones. So it makes sense that Jones applied there because it was about the taking of property without the person ever knowing. Right? Jones says actual notice is not required, but the government has to try hard to increase the likelihood that actual notice would be made. That was the issue in Echevarria. So are you saying then, my colleagues, several have raised the point, you seem to agree that there are due process rights here. You want to argue about whether they've been appropriately given to the Petitioner in this case. But why are you so reluctant to extend Jones? Obviously, if you accept that Jones is there, there's a framework, and either we or a district court can analyze, as you see we've already begun to do, whether the Petitioner in this case has received all the due process rights to which he's entitled. Why is the government so resistant to saying that the concept of Jones, the due process concept, does apply in immigration? You just have to apply the individual facts to the case? You're saying if you apply them in this case, he still loses. What's wrong with that? Sure. So Jones does not hold that additional reasonable steps are required for notice under any circumstances in any case. Right? Jones says that it is a case-specific, fact-specific inquiry. Right. We have to consider the nature of the case, the interests of the parties, and any unique information known about the intended recipient. And why wouldn't that apply in this case? How does that hurt the government? Right. So going back to what I started to say about the statutory scheme here, the statutory scheme governing notice and deportation proceedings is very different from the statutory scheme that was at issue in Jones. And that scheme contemplates already all of those things. It contemplates the interests of the party. It contemplates that there might be a failure of notice. And it gives an escape hatch to every single alien before the deprivation happens. Now, counsel, I understand the government is arguing that overall Mallain applies. Right? Right. And that Jones was applying Mallain. Correct. And that Jones and Mallain both say you look at the specific facts and circumstances before you, which includes the statutory scheme. Yes. And to the extent Jones provides insight to us as to how one applies Mallain, we should look at what the court said in Jones. Right? Sure. But the government is saying Jones, like Mallain, was not setting out any type of bright line rule except essentially balancing the interests of the state against the individual interests sought to be protected. And you need to be looking at whether the notice in the particular case is reasonably calculated. Precisely. But how do you square your argument with the language in Jones that specifically says we've required the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case? Right. Because, again, the statutory scheme in Jones that they were looking at, all that it required was certified mail to be sent to the address of record. And the Supreme Court in Jones wasn't saying that no statute could ever have due process built in. Right? It had a footnote with a giant string site of other states that had tax provisions that would have met due process. It's just that in that case, it wasn't quite enough. So we can look to the statutory scheme here. And this court has held repeatedly that the deportation notice scheme is a fail-safe mechanism for due process. Could I ask a question here?  Sorry. Sorry that I'm zooming in. But this is about the application of Fifth Amendment due process to an immigration scenario. And I thought the Supreme Court had held that inadmissible or excludable aliens rather than deportable aliens were not entitled to Fifth Amendment due process, but only what Congress provided. Isn't that correct? That is true, yes. The Supreme Court has held that aliens are entitled to due process. But what that means may be different depending on the proceeding. And excludable aliens or aliens in exclusion proceedings are entitled only to the process that Congress provides. So you're saying that Mr. Rivaldez was deportable. So for that category of aliens, the due process clause applies. Is that right? We would agree that the due process clause applies here in the deportation proceedings. And he was deportable rather than excludable or inadmissible. Because I know this all happened in the 90s, right? That's correct, yes. So those distinctions made a difference. But you're saying he was deportable and the Supreme Court has made clear that you're entitled to due process if you're deportable. That is correct, yes. Okay, thank you. Did I understand you to say just now that for excludable aliens, it's your view that the Congress has chosen to provide? Well, the Supreme Court held a couple of years ago in Therasigian, I'm not quite sure how to pronounce the case, that an alien in expedited removal, excuse me, expedited removal, which is kind of the post-IRA-IRA version of exclusion proceedings, is entitled to only that process that Congress provides because they are sort of assimilated to the position of an alien knocking at the door at the border. If I understand what you're saying, you're saying that the statute here provides all the due process that the Petitioner is entitled to. But as several have mentioned, in Jones, the Court recognized that there may be a statute that provides a more specific direction and just provides the umbrella of due process. So what I'd like to know, why is the government objecting to Jones applying but subject to the specific, from the government's perspective, due process requirements in the immigration law? In other words, why isn't Jones a due process umbrella? You can answer the question. Due process does apply in the immigration context. In each individual circumstance, there may be a more specific way in which the government can comply with due process, and your argument, I believe, is that's true here, and that you've met that requirement. Is that correct? Sure. So I would agree with you that Jones is an umbrella case on due process, and it gives a framework for how to determine whether notice is reasonably calculated. But why should we not accept that fact? I think you can accept that fact. Okay. So as a Court, we can say Jones does apply as an umbrella concept subject to more specific requirements in an individual case. I think you can say that. I mean, I think, you know, our position is that the facts are so different here because the defendant received the order to show cause of the notice. I get that point, and several of my colleagues have pointed out why that's true. Right. So no matter what, the Petitioner may lose whether Jones applies or not. But Jones provides an umbrella of saying due process applies here. You're saying there is a subtext to this. That's what we ought to be looking at. Sure. And if I may address a couple of points that were made earlier. Before you move on, I want to follow up on what Judge Smith is saying. Just make sure I understand the scope of your agreement with Jones. I read Jones as saying if notice has failed, then you need to look and see if there are other reasonable means of giving notice. So you're agreeing with that specific rule from Jones that it applies in immigration context? If notice of the initiation of proceedings fails. So we're back to the other question of, like, so it's just the initiation of proceedings and not when you need to show up and have your hearing and actually have your opportunity to be heard? In the context of this case of deportation proceedings, yes. Because we're looking at what the question is what is reasonably calculated.  I mean, I think that that's something new that I've just learned that I didn't learn from your briefs. Because you are saying to some degree Jones applies in immigration proceedings. And I think that wasn't clear from your briefs. Sure. I think and right. But you're stopping short. You're saying they're not really entitled to their hearing notice. When what happens in this case happens, they are entitled to have the notice of the hearing notice mailed to the address of record after having receiving instructions to keep the court apprised of your address for the specific purpose of receiving the hearing notice. Is that because of Jones or because of something else? That's because of Jones and because of the statute. And there's no case, am I correct, that ever says that someone is actually entitled to actual notice. What they're entitled to is a process that is reasonably calculated to apprise them. Correct. Right. And so if his address where he received, looks like everything where he showed up, said 4037 North Cleveland Avenue, and the address in which it was sent and said not deliverable did not have the avenue, was that reasonably calculated to get to him? If the court, if I understand your question correctly, if the court mailed it to the wrong address, a different address than the one he provided, then no, that's not reasonably calculated. And that would be a basis to rescind the in absentia order, which getting back to the statutory scheme. Well, but the address that was sent to him to show up for his hearing did not include that avenue. The address that was sent, or the notice that was sent, was sent to the address that he provided, and the government, in the government's underlying briefing, we cite the DMM, the Postal Service Record. If there was no address, it would have been returned stamped no such street or no such number. Well, it said non-deliverable. Right. It said non-deliverable, unable to forward, which, again, if you look in the DMM, means that the person has not provided a forwarding address. Well, but no. What happens if it never, if it's not deliverable to the Cleveland address unless it has the avenue attached to it? That's not what the facts show in this case, and that's not what the DMM says. Well, there's clear inference that that might have happened here. And if the reasonable step of just looking and reviewing the A file would have revealed that, does that not comply with Jones? So, again, this is going back to the statutory scheme. The Court would have had to look at the A file at when it entered its in absentia order of removal, because the statute requires a finding by clear and convincing evidence, clear and convincing and unequivocal evidence, that the notice was mailed to the address of record. What's the relevance, if any, that the government had actual knowledge that its attempt to provide notice was not successful? Right. So what Jones does is ask the Court to try a little bit harder at the outset, to try and effectuate notice, right, to take some additional steps. What the Court knew, the immigration court knew at the time of the in absentia proceeding, and when it knew that the hearing notice had been returned, was that it had mailed the notice to the address that the defendant provided, that the defendant did not provide any other address, and that is undisputed, and that if there were some problem, some failure in the notice that was not the defendant's fault, he would have the opportunity to reopen, to rescind it, to unwind the whole process and start from the very beginning, before the deprivation ever happens, before he is ever deported. So the immigration court had all of that knowledge. It sounds like what you're saying is that there's no difference if the government has actual knowledge that its attempt of service was unsuccessful. There's no... And I don't think that, I mean, I don't think that squares with Jones because I think the issue is that the government has this additional information that its attempt at notice was unsuccessful. And you're sort of leaving out the fact that here also there was a returned, you know, envelope that very clearly provides notice to the government that it was unsuccessful in providing. That's correct. But I think the very clear and material and critical difference is that Jones was never told that he had to keep his address updated for the purpose of the tax sale proceedings. It sounds like a forfeiture argument that you're making, which I think you already, in response to a prior question that I asked, that you're not arguing that there's some sort of forfeiture of the right based on a failure to comply with the statutory requirement. It sounds, what you're saying now sounds very close to basically you're forfeiting your right because you didn't update your address. Well, what I'm saying really, what I mean to say is that Jones just didn't address this set of circumstances. It just didn't address it. It seems like it's very similar to what happened here in that in Jones the person didn't, the government received notice that it was not deliverable or it didn't get to the person. And the government should have then taken reasonable steps if practicable. Right. But Jones had never known that the tax sale had started and had never been told for Does it matter here that since the absentia hearing happened in 1994 and he was actually deported in 2006 and he didn't contest it at that time, does that fact matter? I think that fact goes to his lack of diligence. It would go to the question of whether he's entitled to reopen. Right. So my friend here said he couldn't have moved to reopen. He couldn't have done anything about it because he only had four days. But the notice that he received, the order to show cause initiating proceedings against him, told him. It told him if there's a problem, you can move to reopen. If you never got notice, you can move to reopen. So he knew what the remedy was all along. And this Court held in Perez-Portillo for purposes of a motion to reopen, the Court cannot deny rescission of the in absentia order just by saying, hey, constructive notice was made. We mailed it to the address of record. The Court has to consider all of the facts, all of the circumstances. So that lines up with Jones, right? You have to consider the unique information. So that would be something the Court would consider if the defendant had raised his hand and said, hey, I never got notice. We need to unwind this. You can't deport me yet. The Court would look to say, well, you were arrested in 2006. You didn't move to reopen. You were deported. You didn't move to reopen. You illegally reentered. You didn't move to reopen. Counsel, can I? I'm sorry to interrupt. This is Judge Sanchez again. To go back to the similarities with Jones, there are potential remedies. There were potential remedies for Jones as well. He could have showed up at a tax sale and paid his, you know, delayed taxes. There were other things. But that's not what Jones focused on. To echo Judge Desai's point, Jones was focused on the fact that even when notice is reasonably calculated in normal circumstances under the statutory scheme, something else might need to be done when the government becomes aware that notice in a particular instance has failed. And so that government knowledge, you know, is a plus factor. And what I seem to hear you discuss is only Mullane and not Jones. You know, the statutory scheme provides for notice reasonably calculated, and so therefore that's good enough. But I think you're sort of blending in some things that ignore parts of Jones that are applicable here. No? So I think that Jones, when it did its interest balancing, because it said, right, that's a key part of determining what is reasonably calculated. When it did its interest balancing, it said the balance of interest, given the facts in Jones and the tax sale at issue, required the government to take some front-end additional work, front-end additional steps. It wasn't too much to ask the government. Right? That's different here where you have a statute that for sure the alien is going to know about the impending deprivation before it actually happens because he's going to know he's about to be deported before it happens. And he has the opportunity to be heard. And so it's just kind of pushing to the back end that process without requiring the government to jump through extra hoops at the front end in a case where the incentives are different, where we have aliens who don't want to appear. Right? Who are evading service, who are trying to thwart service. Not everyone. Is that a real protection if, let's play out your scenario. Someone misses their hearing and is ordered removed in absentia. Then they file a motion to reopen. Could that motion be denied simply on the basis that they failed to keep their address updated, consistent with statutory requirements? It can be denied if it is the defendant's fault for the failed notice. As the Supreme Court says. But then this goes back to the Jones issue where the exact same, you know, Jones did not keep up with the legal obligation to keep his address updated for tax purposes either. And the court said, notwithstanding that, the government still owes a due process obligation to try to take additional reasonable steps if it's effective to do so. And what I'm hearing you say is this ephemeral non-remedy through a motion to reopen proceeding that would not satisfy the requirements of Jones. So, again, what we have here is a defendant who was served the order to show cause and told what his obligations were. Jones does not dispense with the obligation of diligence once actual notice of the initiation of proceedings is made. That requirement is made very clear in Mullane, and Jones does not dispense with that obligation. Counsel, let me ask you this. If we assume, arguendo, that the court believes that Jones does apply generally, in the umbrella sense we talked about, there are lots of facts here. You've articulated from the government's perspective what you believe they are. Your opposing counsel has taken the opposite position. What should we do? We're a court of appeal. We're not a fact-finding court. The district court in this case didn't really look at some of the 1326 issues because it didn't think it needed to. Is the right remedy here? We say Jones applied. We send it back to the district court. You'd probably win because of the things that you've talked about. But is that something we should send to the district court, or do you think we ought to be deciding it here based upon our perusal of the record? Sure. I do not think that remand for additional fact-finding is appropriate for several reasons, and I'll try to squeeze them into my remaining two and a half minutes of time. First and foremost, this Court can affirm on any ground, right? And the other three requirements of 1326d are either matters of law or matters that require no additional fact-finding, whether the defendant exhausted his administrative remedies, whether the doors of judicial review were closed to him. But he has a culpable claim that he did exhaust. I mean, do we decide that, or do we send it back to the district court? Well, again, you can dispense with that because the other two are clear as a matter of law. So there's nothing really ultimately for him to win his claim, his motion to dismiss, that this Court can't decide as a matter of law. Secondly, I do want to point out that the defendant did have a chance to address this in the district court at Supplemental Excerpt of Record, page 22. The defendant had never raised Jones, but the court was thinking about these issues, and the court asked at oral argument, what else should the government have done? What could the court have done beyond mail it to the address that your client provided? And the defendant gave no specific answer. It was just, we believe it was fundamentally unfair. He didn't move to reopen, to try to reopen the record, to add evidence, right? So this was brought to his attention, and he gave no response. But I think the ---- But was the defendant ever barred from introducing further evidence besides, say, his declaration? No. No. And then I think the most important issue here is to ---- Well, did you argue on appeal that he forfeited? We raised the issue. We raised the point ---- Where in your brief did you argue that he forfeited? We did not argue that he forfeited. Okay. Thank you. We just raised that he hadn't raised Jones. And also, does the ---- I think your friend on the other side argued that if there's a due process claim that's been raised, does the plaintiff need to specifically argue Jones or invoke Jones? Well, that's why we didn't ---- Okay. We didn't hang our hat on the forfeiture issue. But if I may very quickly say what I think is the most important reason not to remand for fact-finding is we need to remind ourselves of what the defendant's actual claim was at the district court level. It was not that he tried to provide notice somewhere. It was not that even that he had moved. It was not that he was still receiving mail at that address, and by some unknown reason it didn't get to him. It was because he claimed the address didn't exist. He provided no corroboration of this. He's claiming today now that you can look at Google in 2025, but there's no evidence that in 1994 it was a nonexisting address, and the government provided evidence that Portland changes its addresses from time to time. Right? So if it was not an existing address, what else could the court have done? Nothing. Because what that shows is that the defendant is trying to thwart service. He doesn't want to attend his deportation proceedings because he's providing an address that doesn't exist where he knows that the notice will not be received. Thank you very much. Thank you. The Jones court talked very clearly about what process is due, and that certainly would include the time and place of a hearing. That is the most basic information, and the Supreme Court has been looking at that in Ms. Chavez where they're talking about what the sufficiency of a notice is when it does not have it, that it should be in one document and that the key element of notice is time and place. That time and place is absent here. That is why it was a due process violation. There was no effort to do anything beyond, and this position in the district court from the government, we provided certified mail, it came back, end of story. Jones says no. It has to have some further reasonable steps. Not unreasonable steps, but reasonable steps in addition to the service that the court ---- Could you address on that point the colloquy with the district court at SER 22 that your friend on the other side mentioned? If we were to ---- as I understand that exchange, the district court asked is there something else the government could have done, and you didn't identify anything. If we were to remand, do you ---- can you sketch out, is there additional evidence that you would provide by way of explanation of what the government would do? I would say look at the file that shows that the address that was given and that may have been served before said Avenue, A-V-E, and the actual notice did not have that. The certified mail just said Cleveland, North Cleveland. But would you be seeking to introduce additional evidence on that point, or is that something that could be an argument that could be assessed based on the existing record? Well, at 166, we put into the record the problem with the address that the ---- there was a ---- and that once there was the ---- once the government is saying that we need to do nothing further, I think that there are a number of things from Jones that are very obvious that they could do, which include sending a ---- My question was maybe more basic than that. Do you have some additional evidence you would like to present if there were a remand? If there were a remand, I would be elaborating on the problems with the notice that was provided through the certified mail. I don't think that there's been ---- But would your elaboration consist of arguments based on the existing record or the introduction of some new evidence that's not in the current record? I don't know, but I would certainly be adding additional information based on the evidence that is in the record and would be evaluating whether there's anything further that should be brought to the court's attention. How about on the other, like exhaustion, the other 1326? Do you have colorable claims regarding those? Yes. They are briefed below. And, you know, when we were talking about why the court didn't reach any questions about prejudice or exhaustion or judicial review, page 30 of the SER, the prosecutor did not ask for it. They said, do I need to do anything else? Nope. So I think that for this court to try to jump in and be the court of first review on any issues is contrary to the general rule that this is a court of review, that you let the district court make its decisions, both legal and factual, and based on those legal and factual decisions, that's what the court makes its ruling. You take the position that your client did, in fact, put forth evidence to show satisfaction of 1326D and then the district court just didn't address it. Is that correct? Yes. Okay. It did not resolve the arguments that were made in that. I do want to address the question that was raised about excludability as opposed to deportability, which was in effect before IRERA in 1996. And the rights are very different. Once the person is in the United States, has presence in the United States, that's where, under Plyler and a number of Supreme Court cases, the due process clause applies regardless of the person's legal status. And the case that my opponent referred to, Thurgacian, that was making the distinction based on the person not having established presence in the United States. There's no question here that their presence has been established by Mr. Rivera-Valdez. So he should have full coverage of the due process clause. Excuse me. I thought the Supreme Court said, for example, a parole situation where a person might be present, but under parole it's a legal fiction that he is not present and he would not be entitled to due process. I'm not saying that applies here, but that's really a continuing rule of the Supreme Court. And I think the Supreme Court in Clark v. Martinez, when it was dealing with the Mariel Cuban folks and their rights under the statutes, was recognizing that rights do apply to the people who are present in the United States, even if they are in a parole status. On remand, I think that is exactly what the Court should do here. The Court has a clean one-issue appeal here about whether the Jones v. Flowers provides the correct analytical framework for making a determination. It's not a question of whether the due process clause is satisfied by telling somebody that there is going to be something happening, but we're not telling you what it is yet. The due process applies to the time and place of the hearing. And once there is actual knowledge that that notice was ineffective, some further activity has to happen, some further additional reasonable steps, and those additional reasonable steps I believe are going to be established in this case on a remand that the government below simply did nothing, despite not having used the same address as written in the previous documents provided and for what looks from a simple Google search, in 2025 anyway, as a simple error of a border street, and that that was raised at page 166 of the Executive Records in the Court below, and the Court should make the determination in the first instance about whether that violated the due process clause. In the absence of further questions? Thank you. Thank you. Mr. Sady and Ms. Barr, thank you very much for your oral argument presentations here today. They're greatly appreciated. The case of United States of America v. Leopoldo Rivera Valdez is now submitted, and we are adjourned. Thank you. All rise. This Court for this session stands adjourned.
judges: MURGUIA, GOULD, CALLAHAN, SMITH, IKUTA, BENNETT, MILLER, FORREST, SANCHEZ, THOMAS, DESAI